NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0177n.06

No. 21-3814

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

Apr 28, 2022
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| BAR PROCESSING CORPORATION, | ) | |
| Plaintiff-Appellant, | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE |
| KEVIN D. BARNES; TAFT STETTINIUS & | ) | NORTHERN DISTRICT OF |
| HOLLISTER LLP, | ) | OHIO |
| Defendants-Appellees. | ) | |
|  | ) | |

Before: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.**   In a prior lawsuit, Bar Processing Corporation sued one of its former employees, a former corporate customer, and a newly formed competitor company after learning that the employee stole confidential information from it and provided the information to the other defendants.  The parties settled that lawsuit.

Bar Processing now sues its former law firm and one of the firm's attorneys, claiming that the attorney committed malpractice and breached his fiduciary duties by providing business-related legal services to the defendants in the now-settled lawsuit.  The district court disagreed and granted summary judgment against Bar Processing.  We affirm.

**I.**

Bar Processing operates a steel-bar processing business.  In 2011, it purchased the assets of a competitor company in Wickliffe, Ohio.  That company's then-general manager, Dennis Perrino, joined Bar Processing after the transaction and became the manager of Bar Processing's

new Wickliffe facility. In that role, Perrino worked closely with various Bar Processing customers, including Jade-Sterling Steel Co., Inc.

After years of working with Perrino, in February 2018, Jade decided to start a new entity called Great Lakes Steel that would perform Jade's steel-processing work in-house, rather than relying on Bar Processing. Jade asked Perrino to join its new business, hoping that he could bring several Bar Processing customers along with him.

To help it get started, Jade sought advice from Kevin Barnes, an attorney at Taft Stettinius & Hollister, LLP, whom Jade had retained as counsel in finance and business matters since the 1990s. Unbeknownst to Barnes, another Taft attorney had been representing Bar Processing from 2007 to 2019 in workers' compensation matters. Barnes ran a conflict check for Great Lakes, Jade, and each of Jade's principals—but not for Bar Processing or Perrino—and it identified no conflicts. Then, at some point in early April 2018, and while still working for Bar Processing, Perrino downloaded confidential information from his work computer onto a storage device and gave it to Jade.

Later that month, on April 24, 2018, Jade informed Barnes that it wanted Great Lakes to hire Perrino from one of Jade's current steel vendors. Barnes informed Jade that it "should not and could not obtain any confidential information regarding [Perrino's] current employer." After confirming that Perrino was not subject to a noncompete clause under his employment agreement with Bar Processing, Barnes drafted a proposed employment offer letter from Great Lakes to Perrino. Barnes did not run a new conflict check at that time despite Perrino's employment agreement's naming Bar Processing as his employer.

In the offer letter, Barnes repeated his advice that Perrino could neither take nor disclose any confidential information from his current employer to Great Lakes. Barnes maintains that he

was unaware that Perrino had at that time already supplied Jade with confidential Bar Processing information. Between April and August 2018, Barnes assisted Jade entities to purchase machinery and real estate, prepare formation paperwork and operating agreements, and obtain financing for their new venture.

Bar Processing soon discovered what Perrino had done and sued him, Jade, and Great Lakes. Barnes ran a new conflict check that included Bar Processing and Perrino to determine whether Taft could represent Jade and Great Lakes in the suit. Due to an unidentified "glitch," the system revealed no conflicts. Nevertheless, Bar Processing notified Barnes that another Taft attorney had been representing it in workers' compensation matters. Neither Barnes nor any other Taft attorney represented any party in the litigation. The parties ultimately settled the suit, with Bar Processing agreeing to pay Great Lakes $4 million to purchase its machinery and real estate.

Following the settlement, Bar Processing sued Taft and Barnes in federal court.[1] Count I alleges that Barnes committed legal malpractice, and Count II alleges that he breached his fiduciary duties to Bar Processing. For both claims, Taft is claimed to be vicariously liable.

After discovery, Barnes and Taft moved for summary judgment, and the district court granted it in their favor. The court held that the legal malpractice claims failed because Bar Processing and Barnes had no attorney-client relationship, and the breach-of-fiduciary-duties claims were, in substance, legal malpractice claims, which failed for the same reason. Bar Processing appeals, disputing only the district court's judgment on the breach-of-fiduciary-duties claims.

---

[1] Bar Processing sued Taft in the United States District Court for the Eastern District of Michigan, and Barnes in the United States District Court for the Northern District of Ohio. Both complaints are "substantially the same." The district court in Michigan transferred the case against Taft to the Northern District of Ohio, and the two cases were consolidated.

**II.**

We review de novo a district court's grant of summary judgment, viewing the evidence in the light most favorable to the non-moving party. *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020). Summary judgment is appropriate when "no genuine dispute as to any material fact" exists and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

**III.**

Bar Processing argues that the district court erred by concluding that its breach-of-fiduciary-duties claims were actually legal malpractice claims in disguise. Bar Processing insists that it has a distinct claim that Barnes owed it fiduciary duties—because another Taft attorney had an ongoing attorney-client relationship with Bar Processing—and breached those duties when he agreed to represent clients with interests adverse to Bar Processing. In Bar Processing's view, it matters greatly that its breach-of-fiduciary-duties claims do "not allege Barnes negligently rendered legal services to [*it*]."

However, under Ohio law, tort claims, such as breach-of-fiduciary-duty claims, against an attorney for his good faith representation of a client are considered legal malpractice claims. *Omega Riggers & Erectors, Inc. v. Koverman*, 65 N.E.3d 210, 219 (Ohio Ct. App. 2016). There is no "independent claim for breach of fiduciary duty against an attorney acting in his capacity as attorney and counselor." *Id.* at 223. Such a claim is considered to be a legal malpractice claim because it relates to the manner in which an attorney represented a client. *Muir v. Hadler Real Est. Mgmt. Co.*, 446 N.E.2d 820, 822 (Ohio Ct. App. 1982) ("Malpractice by any other name still constitutes malpractice."); *see, e.g.*, *Omlin v. Kaufman & Cumberland Co., L.P.A.*, 8 F. App'x 477, 479 (6th Cir. 2001) (rejecting plaintiff's argument, under Ohio law, that her breach-of-fiduciary-

duty claim against a law firm was "something other than a [claim for] legal malpractice"); *Ill. Nat'l Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.*, 2010-Ohio-5872, ¶¶ 15–17, 2010 WL 4926572, *3–4 (Ohio Ct. App. Dec. 2, 2010) (holding that breach-of-fiduciary-duty claims "arising out of an attorney's representation, regardless of their phrasing or framing, constitute legal malpractice claims").

If the "gist of the complaint" sounds in malpractice, then the claim must be treated as duplicative of malpractice. *Hibbett v. Cincinnati*, 446 N.E.2d 832, 836 (Ohio Ct. App. 1982). But not all attorney-related tort claims are necessarily legal malpractice claims. When an attorney's alleged misconduct is "distinct" from the conduct underlying the malpractice claim, a separate tort claim may proceed. *Pierson v. Rion*, 2010-Ohio-1793, ¶ 14, 2010 WL 1636049, *2 (Ohio Ct. App. Apr. 23, 2010).

Here, Bar Processing's claims sound in legal malpractice. They are based on allegations that Barnes—and, vicariously, Taft—assisted in the formation and financing of entities directly adverse to Bar Processing, concealed their conflict of interests, and failed to perform an adequate conflicts check; failed to recognize that Perrino, Great Lakes, and Jade were engaged in tortious conduct, advise them to cease that conduct, and inform them that they could be liable to Bar Processing; and failed to advise Bar Processing of those tortious acts. These are quintessential legal malpractice allegations. No matter how they are labeled in the complaint, they concern an attorney's exercise of his professional legal judgment. *See Omega Riggers*, 65 N.E.3d at 219 ("A claim against an attorney for actions taken in his professional capacity is a claim sounding in legal malpractice no matter how artfully the pleadings attempt to raise some other claim."); *Gullate v. Rion*, 763 N.E.2d 1215, 1219 (Ohio Ct. App. 2000) ("Malpractice consists of the professional

misconduct of . . . attorneys" and "[i]t makes no difference whether the professional misconduct is founded in tort or contract, it still constitutes malpractice" (cleaned up)).

Moreover, Bar Processing uses the same operative facts to plead both its malpractice and breach-of-fiduciary-duties claims, and alleges that both claims resulted in the same injury. Indeed, with a single exception, the allegations listed in Bar Processing's breach-of-fiduciary-duties claims are identical to those listed in its legal malpractice claims. We agree with the district court's decision to "not accept [Bar Processing's] attempted breach of fiduciary duty claim as a viable alternative to [its] failed malpractice claim."

Bar Processing emphasizes that its claims focus on the legal services that Barnes rendered to Jade and Great Lakes, not the services he rendered to Bar Processing. It argues, then, that because it had no attorney-client relationship with Barnes, its claims cannot sound in legal malpractice. This very argument was rejected by the Ohio Court of Appeals in *Tye v. Beausay*, 98 N.E.3d 970, 981–82 (Ohio Ct. App. 2017). After surveying Ohio law, the court explained that "the potential viability of a tort claim against an attorney turns on whether the claim arises from the attorney's performance as an attorney in his representation of *a client*, not necessarily *the tort plaintiff*." *Id*. Thus, it makes no difference that Bar Processing brings its claims as a third party— the claims still sound in malpractice.[2] *See Kim v. Randal A. Lowry & Assocs.*, 166 N.E.3d 146, 151 (Ohio Ct. App. 2021) (treating third-party tort claims as legal malpractice claims).

Because Bar Processing's claims sound in legal malpractice, they must be "analyzed in a legal-malpractice context." *Omega Riggers*, 65 N.E.3d at 219. Generally, to maintain a claim for legal malpractice, a plaintiff "must demonstrate the existence of an attorney-client relationship

---

[2] Bar Processing argues that it should not be "penalized" for pleading claims in the alternative, as permitted by Federal Rule of Civil Procedure 8(d)(2). What Bar Processing misunderstands, however, is that it pleads *duplicative* claims, not merely alternative claims.

giving rise to a duty, a breach of that duty, and damages proximately caused by that breach." *New Destiny Treatment Ctr., Inc. v. Wheeler*, 950 N.E.2d 157, 162 (Ohio 2011). Where, as here, it is undisputed that no attorney-client relationship exists, the claim may nevertheless proceed as a third-party malpractice claim. *See Omega Riggers*, 65 N.E.3d at 219.

But, under Ohio law, an attorney may not be held liable by a third party for actions the attorney took in the course of representing a client, "unless the third party is in privity with the client for whom the legal services were performed, or unless the attorney acts with malice." *Simon v. Zipperstein*, 512 N.E.2d 636, 638 (Ohio 1987); *see also Scholler v. Scholler*, 462 N.E.2d 158, 163 (Ohio 1984) (describing the requirement that there be an attorney-client relationship or a legally recognized substitute). Bar Processing did not argue or present evidence in the district court that it was in privity with Jade or Great Lakes, or that Barnes acted with malice towards it. Nor does it argue those issues on appeal. Without establishing these necessary elements, Bar Processing cannot succeed on those claims.

In the absence of viable claims against Barnes, Bar Processing's claims against Taft fail as well. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 913 N.E.2d 939, 943–45 (Ohio 2009) (explaining that a law firm can be held vicariously liable only if one of its attorneys is first held directly liable).

## IV.

Because Bar Processing's claims sound in legal malpractice, and because no attorney-client relationship or legally recognized alternative exists, Bar Processing's claims fail as a matter of law. We affirm the judgment of the district court.